Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| In re: ) | |
| ) | |
| ROBERT HARTMAN, ) | |
| ) | Case No. 18-bk-00444 |
| ) | |
| Debtor. ) | Chapter 13 |
| ) | |
| ) | |
| MICHAEL WEAVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 18-ap-00054 |
| ) | |
| ROBERT HARTMAN, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Robert Hartman, debtor ("Debtor") and defendant in this adversary proceeding, seeks dismissal of the complaint filed against him by *pro se* creditor Mike Weaver ("Weaver"), (Doc. # 20), who filed the original complaint in this adversary proceeding on December 4, 2018, with the final version of the complaint being filed on April 3, 2019 (Doc. # 21).

### Standard for Dismissal

Under Federal Rule of Civil Procedure 12(b)(6), a party may seek to dismiss a complaint against it when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012(b). When evaluating a motion to dismiss, the court must (1) construe the complaint in a light favorable to the non-movant, (2) accept the factual allegations in the complaint as true, and (3) draw all reasonable inferences in favor of the plaintiff. 2 *Moore's Federal Practice – Civil* § 12.34 (2018); *see also Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 702 (4th Cir. 2016). "Rule 8(a)(2) requires that 'a complaint . . . contain[ ] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' in the sense

1

that the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *McCleary-Evans v. Maryland Dept. of Transp., State Highway Admin*., 780 F.3d 582, 585 (4th Cir. 2015) (citations omitted) (alterations in original) (quoting *Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 570).  Furthermore, "this rule for pleading 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'  Instead, a complaint must contain '[f]actual allegations [sufficient] to raise a right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  In determining a motion to dismiss, the court is not adjudicating whether a plaintiff will ultimately prevail on the merits of the complaint; it is only determining if the plaintiff is entitled to offer evidence to support the claims. *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011).  Apart from not meeting the factual plausibility requirements of Federal Rule of Civil Procedure 8, a failure to meet any heightened pleading standard for fraud required by Rule 9(b) implicates a failure to state a claim on which relief can be granted under Rule 12(b)(6).  *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th Cir. 2015).

## Discussion and Analysis

According to Weaver's allegations, he and the Debtor originally entered into a contract on July 1, 2012, and subsequently amended the same at least once by agreement dated November 24, 2016.  Pursuant thereto, Weaver provided "cash investment in [sic] purchase of firearms inventory for a return of 25% of profit of each firearm invested."  Specifically, Weaver invested $75,000[1] into the Debtor's business, Eagle Eye Gun Shop, for the purpose of assisting the Debtor in purchasing and expanding his inventory.  In exchange, Weaver was entitled to receive 25% of the profits, and eventually the payments were supposed to total the invested amount plus a 25% return on investment, identified in the agreement of November 24, 2016, as interest.[2]

---

[1] The complaint also refers to an initial investment of $75,201.81 at various points. (Doc. # 21 ¶ 7.)  Any discrepancy, however, is immaterial to the court's disposition.

[2] The alleged facts and documents attached do not clearly indicate whether the $75,000 "investment" should be characterized as a debt/loan or as an equity investment in some sort of business entity.  In the Chapter 13 case as a whole, neither party has alleged that the gun shop had any distinct existence as a business entity, that Weaver had any specific property ownership percentage in the inventory itself, or that Weaver's "investment" gave him any contractual right to make or veto any business decisions concerning the purchase or sale of gun inventory.

It is undisputed that the Debtor eventually stopped paying Weaver his share of the profits, and the Debtor's overall financial situation prompted him to file this Chapter 13 bankruptcy case on May 9, 2018. Then, on April 9, 2019, the court confirmed his Chapter 13 plan. At that time, he reported $25,000 in "[i]nventory of firearms and accessories used at business "Eagleye." (Schedule A/B.) Prior to filing, the Debtor allegedly utilized the Cochran Auction Company in fall of 2017 to sell a large portion of the inventory. Weaver filed a proof of claim in the Chapter 13 case, and his claim has become an allowed unsecured nonpriority claim for purposes of bankruptcy law, which has its own methods, rules, and procedures for handling such claims. *See generally* 11 U.S.C. §§ 501, 502, 1322, & 1325. The court confirmed the Debtor's Chapter 13 plan on April 9, 2019, and Weaver's unsecured claim is entitled to a pro rata share of the distributions to be made to unsecured creditors. However, on December 4, 2018, Weaver also filed the instant adversary proceeding objecting to the Debtor's discharge of debt under 11 U.S.C. § 727(a)(2)-(5) and the discharge of his specific claim under § 523(a)(2).[3] Weaver alleges various theories of relief that, when construed liberally in his favor, can be separated into either five or six counts.

### A.  Causes of Action Under 11 U.S.C. § 727(a)

The four counts pertaining to 11 U.S.C. § 727(a), which contains grounds for which a bankruptcy debtor may be denied a Chapter 7 discharge as to all creditors, were amplified by the allegations of the complaint. Based on the aforementioned prepetition sale of the gun inventory followed by the Debtor's failure to pay over 25% of the profits, Weaver alleged a violation of § 727(a)(2). Additionally, he alleged that, in an effort to conceal inventory and sales, the Debtor made arrangements for the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") to confiscate certain gun records in violation of § 727(a)(3).[4] He also details many alleged falsehoods and inconsistencies in the Debtor's Chapter 13 petition, including, *inter alia*, failing to report the cell phone he owns and life insurance, reporting zero cash, under-reporting his bank-account balances, understating the value of the remaining inventory as being $25,000 in the Chapter 13 petition, and failing to account for or report large ATM cash withdrawals totaling $30,000 prepetition and postpetition – all in violation of § 727(a)(4). Finally, Weaver alleges that the

---

[3] Confirmation of the plan does not adversely affect or delimit the relief Weaver seeks in this adversary proceeding.
[4] The records consist of ATF forms executed in conjunction with gun sales (Form 4473).

3

Debtor's decision to conduct the prepetition bulk gun auction, rather than continuing individual gun sales not requiring an auctioneer's commission or a discount, was a violation of § 727(a)(5).

The Debtor's motion to dismiss essentially proffers the allegations, version of events, and arguments that he would likely make at trial in defense of this action, the vast majority of which do not meet or address Rule 12(b)(6) standards.[5]

Notwithstanding the bases for dismissal alleged in the motion, the court notes that 11 U.S.C. § 727(a), which governs denial of discharge, applies only in a case under Chapter 7. 11 U.S.C. § 103(b). This adversary proceeding arises out of a Chapter 13 case in which discharge is governed by § 1328. Quite literally, Chapter 13 applies only in a case under Chapter 13. 11 U.S.C. § 103(i). Notably, § 1328 contains various limits and exceptions to discharge in a Chapter 13 case, § 1328(a)(1)-(4), (c), (d), (f), (g), (h), but nowhere do these limits include or cross-reference the § 727(a) grounds for objection to the discharge of all debts in a Chapter 7 case, although they do cross-reference particular exceptions to discharge of individual debts under § 523(a) more than once. Thus, § 727(a) is inapplicable in a Chapter 13 case. *See generally* In re Mapley, 437 B.R. 225, 228 n.8 (Bankr. E.D. Mich. 2010); *In re Parker*, 49 B.R. 61, 62 (Bankr. E.D. Va. 1985); *In re Il Nam Chang*, 539 B.R. 733, 736–38 (Bankr. M.D. Pa. 2015); *In re Yotis*, 521 B.R. 625, 639–40 (Bankr. N.D. Ill. 2014). For this reason and other differences, the Chapter 13 discharge in § 1328 is broader than the discharge under any other chapter. *In re Il Nam Chang*, 539 B.R. 733, 736–38 (Bankr. M.D. Pa. 2015). The opinion in *In re Parker*, 49 B.R. 61, 62 (Bankr. E.D. Va. 1985), suggests that the alternative remedy to § 727(a) in Chapter 13 is an objection to plan confirmation due to the "good faith" requirement for confirming a Chapter 13 plan, while *In re Il Nam Chang*, 539 B.R. 733, 737–38 (Bankr. M.D. Pa. 2015), noted the same possibility in addition

---

[5] The parties have filed several rounds of complaints, motions to dismiss the complaint, motions to amend the complaint, followed by complaint amendments. (Doc. ## 8, 12, 14, 20, 21, & 22.) The court has reviewed all the related materials. Many of the labels used for these documents were incorrect or confusing, so the final number of complaint versions is unclear. Generally, the later filings of both parties added little new factual material, argument, or legal analysis to the earlier ones. The final chronological version of Weaver's complaint appears as the document filed as "Creditors [sic] Response to Debtors [sic] Motion to Dismiss the Second Amended Complaint" on April 3, 2019. (Doc. # 21.) Technically, the Debtor's final motion to dismiss was filed on April 1, 2019, (Doc. # 20), although his attorney also filed a "response" to Weaver's previous filing (Doc. # 21), which in substance appeared to be another complaint, on April 3, 2019 (Doc. # 22).

to noting that lack of good faith could be a ground for a motion to dismiss a Chapter 13 case under § 1307(c), with each "Chapter 13 filing [being] assessed on a case-by-case basis in light of the totality of the circumstances," *id.*

Because § 727(a) does not apply in this case, Weaver has failed to state claims upon which relief can be granted to the extent his complaint has attempted to raise separate counts under § 727(a)(2), § 727(a)(3), § 727(a)(4), and § 727(a)(5). Accordingly, these counts will be dismissed under Federal Rule of Civil Procedure 12(b)(6). As pointed out in *In re Yotis*, 521 B.R. 625, 639–40 (Bankr. N.D. Ill. 2014), a dismissal of a § 727(a) count under these circumstances should be without prejudice given that hypothetically a Chapter 13 case could be converted to one under Chapter 7 down the road. In that instance, a new deadline and new opportunity for filing complaints objecting to discharge would emerge under Federal Rule of Bankruptcy Procedure 1019(2) in the converted case.

### B. Causes of Action Under 11 U.S.C. § 523(a)

Weaver also invokes the § 523(a)(2) fraud exception to discharge for specific debts. In relevant part, § 523(a)(2) provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-- . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--(A) false pretenses, a false representation, or actual fraud,
> . . . .

11 U.S.C. § 523(a)(2). "As a threshold issue, the exception to discharge only applies if the debtor actually obtained property or money by false pretenses, a false representation, or by actual fraud." *In re Crites*, No. 15-AP-30, 2016 WL 6208314, at *4 (Bankr. N.D. W. Va. Oct. 21, 2016) (citing 4 *Collier on Bankruptcy* ¶ 523.08[a]). Substantively, "the Supreme Court established that the terms within § 523(a)(2)(A) should be interpreted according to the common understanding of those terms at the time the statute was enacted," utilizing the definition of fraudulent misrepresentation in the *Restatement (Second) of Torts* (1976). *In re Biondo*, 180 F.3d 126, 134 (4th Cir. 1999). The Fourth Circuit held that a creditor asserting a claim under § 523(a)(2)(A) must prove five elements by a preponderance of the evidence—namely, "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages." *Nunnery v. Roundtree (In re Roundtree)*, 478 F.3d 215, 218 (4th Cir. 2007).

Additionally, Federal Rule of Civil Procedure 9(b), made applicable to adversary proceedings in bankruptcy, requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Bankr. P. 7009. Where Federal Rule of Civil Procedure 9(b) applies to create a heightened pleading requirement for fraud, it applies in addition to the *Twombly-Iqbal* Rule 8(a)(2) and Rule 12(b)(6) requirement that the nonconclusory factual allegations in a complaint must be sufficient to raise the likelihood of the plaintiff's recovery to a plausible level, not merely a possibility. *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010); *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160, 170–71 (2nd Cir. 2015). Under Rule 9(b), a "plaintiff must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby. . . . These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (internal quotations and citations omitted). Rule 9(b) applies to actions to except a debt from discharge under § 523(a)(2). *In re Cohn*, 54 F.3d 1108, 1120 (3rd Cir. 1995); *In re Kullgren*, 109 B.R. 949, 954 (Bankr. C.D. Cal. 1990).

Although Weaver also attempts to meet the relevant pleading requirement by generally referring to the Debtor's conduct in failing to pay him his 25% entitlement from gun sales as fraudulent, as well as by detailing many of the alleged falsehoods in the bankruptcy petition upon which he is relying to establish his claim under § 727(a)(4), he fails to understand the application of § 523(a)(2). Section 523(a)(2) excepts from discharge certain categories of actual fraud that, prior to the bankruptcy case, produce, induce, or cause the specific debt at issue held by the plaintiff.

Weaver has not alleged with particularity any fraudulent misrepresentations, false pretenses, or other forms of actual fraud that existed *before*, and thereby induced, the initial agreement between Weaver and Debtor for payment of 25% of the gun-sale profits in return for his $75,000 "investment." Rather, the parties appear to have performed satisfactorily for a number of years subsequent to 2012. Only after the Debtor eventually ceased to honor his agreement to pay profits in 2017 and 2018 did the debt created by this contractual arrangement land in a bankruptcy case. Many of the alleged falsehoods that Weaver identifies in the second amended complaint, including understating the value of the inventory in the bankruptcy petition, occurred

after the parties created the debt and after the Debtor had already breached the contract in 2018; they did not induce Weaver in the first instance to invest $75,000 in the gun shop. "The mere failure to carry out a promise in contract, however, does not support a tort action for fraud." *Strum v. Exxon Co., U.S.A., a Div. of Exxon Corp.*, 15 F.3d 327, 331 (4th Cir. 1994) (citing *Hoyle v. Bagby*, 253 N.C. 778, 117 S.E.2d 760, 762 (1961)).

At various points, Weaver alleges in conclusory fashion that the prepetition auction of the firearm inventory constituted a transfer of "his" gun inventory, which amounted to some form of "theft." If theft were the correct categorization for the events that transpired, it could potentially implicate a § 523(a)(4) "larceny" exception to discharge, although this was never identified in any of the complaints. Under federal common law, "[l]arceny is defined as the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to the taker's use without the consent of the owner." *In re Graziano*, 35 B.R. 589, 594 (Bankr. E.D.N.Y. 1983). Larceny does not occur under § 523(a)(4) if and when the property at issue lawfully comes into a debtor's possession. *Id.*

To the extent that the contract between the Debtor and Weaver has been pled and bolstered by various attachments to the pleadings, an examination of the materials fails to provide enough detail to demonstrate that Weaver owned any particular percentage of that inventory or other specific personal property. Even if he did, the Debtor in operating the gun shop clearly had authority to sell the inventory, since that was the whole point of the business. Neither did Weaver plead that the agreement gave him any sort of control or voting power over the business decisions or conduct of the Debtor's gun shop, including when or how to sell the inventory (for instance, individual retail sales versus bulk auction sales), in spite of his characterization of the $75,000 being an "investment."

To the extent the "theft" or larceny allegation is directed at the Debtor's use of the gun-sale proceeds, Weaver has not pled that he ever had possession or control of the proceeds, and that the Debtor then wrongfully took possession or control over the funds away from him. Rather, the Debtor had possession and control of inventory proceeds by virtue of being the owner and operator of the gun shop, and he failed to pay them over in breach of his agreement, which is different than theft.

Weaver filed a proof a claim, resulting in claim number four in the main bankruptcy case on July 12, 2018, and no objection has been filed thereto, rendering it an allowed unsecured claim

in the amount of $75,000. Thus, there is no dispute that Weaver has a claim in the main bankruptcy case and will be treated accordingly along with other unsecured nonpriority claims. However, Weaver has not pled any exception to the possible future Chapter 13 discharge of debt in this case.

## Conclusion

Accordingly, the court does hereby concludes that plaintiff Mike Weaver's four counts under 11 U.S.C. § 727(a)(2)-(5) will, by separate order, be dismissed without prejudice for failure to state a claim, subject to being refiled should this Chapter 13 case be converted to a Chapter 7 case. The court further concludes that plaintiff Mike Weaver's counts under 11 U.S.C. § 523(a)(2) and (4) will be dismissed with prejudice for failure to state a claim.